# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STANLEY F. FROMPOVICZ, Jr.,** | : | **No. 3:06cv2120** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **TOWNSHIP OF SOUTH MANHEIM,** | : | |
| **TERRY KOCH,** | : | |
| **JOHN STOCK,** | : | |
| **THOMAS ZENKER,** | : | |
| **JUDY EPTING,** | : | |
| **ATTORNEY JAMES WALLBILLICH,** | : | |
| **THE CARRULLO DATTE** | : | |
| **WALLBILLICH LAW FIRM,** | : | |
| **SYSTEMS DESIGN** | : | |
| **ENGINEERING, INC.,** | : | |
| **STEVEN MOYER,** | : | |
| **THE ZONING HEARING BOARD OF** | : | |
| **SOUTH MANHEIM TOWNSHIP,** | : | |
| **MARGARET STROUSE,** | : | |
| **CLAIR F. MOYER,** | : | |
| **RAYMOND TAYLOR,** | : | |
| **THE PLANNING COMMISSION OF** | : | |
| **SOUTH MANHEIM TOWNSHIP,** | : | |
| **WARREN MALLONE,** | : | |
| **ELAINE MILLER, and** | : | |
| **GREGORY WOLFE,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court are defendants' motions to dismiss the instant complaint

(Docs. 34, 38 and 45). Because they advance substantially the same issues, we will

address them all in the same ruling. The matters have been fully briefed and are

ripe for disposition.

**Background**

Plaintiff owns the property in dispute in this litigation, which is located in the Township of South Manheim, Pennsylvania.  (Complaint (hereinafter "Complt.") (Doc. 1) at ¶ 1).  He purchased that sixty-acre property in June 2000.  (Id. at ¶ 8). The property was zoned Industrial Park ("IP").  (Id.).  At the time relevant to this lawsuit, plaintiff alleges, the Towship Zoning Ordinance "permitted by right" land uses permitted anywhere in the township.  (Id. at ¶ 9).  Uses not permitted in other zones could, after application, be allowed in an IP by "Special Exception."  (Id.).  On May 1, 2001, plaintiff applied for a zoning permit that would allow him to load trucks with water from a spring on his property.  (Id. at ¶ 10).  According to the plaintiff, David Siminitus, the Township's Zoning Officer, concluded that trucking, warehousing and distribution were all permitted by right in the IP.  (Id. at ¶ 11). Siminitus also found that removing ground water did not constitute a zoning matter. (Id.).

Though plaintiff contends he did not need a special permit from the township to recover water from his property, he alleges that such activity required a permit from the Pennsylvania Department of Environmental Protection (DEP).  (Id. at ¶ 12). On July 5, 2001, after he received what he considered approval from Siminitus for his spring-water project, plaintiff applied to the DEP for a permit to "withdraw, filter, disinfect, store, and haul spring water" from the property in the IP.  (Id. at ¶ 14).

2

Plaintiff on July 8, 2001 also sent notice to the Township and the county that he had applied for this permit from DEP. (Id. at ¶ 15). Plaintiff alleges that DEP normally refuses to review a permit application without receipt of project approval from the municipality where the project is located. (Id. at ¶ 16). On July 21, 2001, Siminitus sent DEP notice that the Township would issue plaintiff a zoning permit once the Township received a land development plan from plaintiff. (Id. at ¶ 17). Siminitus in an August 2001 meeting informed the plaintiff that no such plan would be necessary if no buildings were constructed on the property. (Id. at ¶ 18). Plaintiff subsequently deleted the only planned building from his plans. (Id. at ¶ 19). The Township Solicitor concurred with this reading of zoning requirements, sending a letter confirming that position to the zoning officer. (Id. at ¶ 20). After this change in plans, plaintiff's project no longer required substantial expenditures for construction. (Id. at ¶ 21). The only construction required was a concrete pad upon which water silos would be placed. (Id.). Plaintiff contends that the water silos and equipment were chattel and "not appurtenant to real estate." (Id.). He modified his application to indicate this change in plans and construction cost. (Id.).

Plaintiff eventually received a zoning permit, which Siminitus delivered by hand to the job site on August 28, 2001. (Id. ¶ 23). Siminitus wrote on the permit that the document was "[n]ot to be used until DEP permit is granted." (Id. at ¶ 24). Plaintiff contends that permits from the DEP could not be "received" before the completion of construction. (Id.). Over the next month, local opposition to plaintiff's

proposal developed.  (Id. at ¶ 26).  These opponents appeared at a Township Board of Supervisors meeting on September 17, 2001.  (Id.).  In the face of this opposition, the Board adjourned to executive session.  (Id.) at 27).  After meeting for an hour, the board returned to public session and attempted to change the Township's zoning ordinance.  (Id.).  The Supervisors concluded that plaintiff's proposed water removal constituted mining, which could be pursued in the IP only through a special exemption.  (Id. at ¶ 28).  Plaintiff alleges that only the Zoning Hearing Board, and not the Supervisors, had the power to interpret the zoning code or direct the zoning officer to take specific actions.  (Id.).  No zoning officer had disapproved of plaintiff's proposed use, and no zoning officer has revoked the zoning permit granted in August 2001.  (Id. at ¶ 32).

Township Solicitor Caravan wrote plaintiff on October 5, 2001 to inform him he would have to attend a special exception hearing if they intended to obtain water from a well.  (Id. at ¶ 34).  If plaintiff wished to take the water from the surface of a spring, however, Solicitor Caravan concluded that he would not need any additional permit.  (Id.).  The operations permit obtained by the plaintiff from the Pennsylvania Department of Environmental Protection, issued on April 16, 2002, defines the source of the water for the plaintiff's project as "spring" water.  (Id. at ¶ 35).  The permit requires use as a surface water supply.  (Id.).  Plaintiff delivered a copy of his DEP permit to the Township Office on April 17, 2002.  (Id. at ¶ 39).  The zoning permit he acquired from the Township in August 2001 required him to do so.  (Id.).

4

The citizens' group opposed to plaintiff's project, The Friends of Bear Creek, had become organized by the fall of 2001.  (Id. at ¶ 33).  They hired Defendant James Wallibillich and the Cerrullo Datte Wallibilich law firm to represent their interests.  (Id.).  On January 6, 2002, the Township fired its solicitor and replaced him with Wallibilich.  (Id. at 37).  At the time Wallibilich took the job, he still represented The Friends of Bear Creek.  (Id.).

On May 6, 2002, the Township held a special meeting to discuss complaints by the Friends of Bear Creek about plaintiff's permit for and operation of his project.  (Id. at ¶ 40).  The Board of Supervisors ordered Samuel Krick, who had become the Township Zoning Supervisor earlier that year, to send plaintiff an enforcement letter ordering him to cease and desist operation of his project.  (Id.).  The Board also ordered the Zoning Officer to take legal action against the plaintiff if he failed to comply with the Township's order.  (Id.).  Krick concluded that the Board lacked the authority to zone for water uses, and he refused to issue the enforcement letter.  (Id. at ¶¶ 41-42).  He also refused to interfere with the permit that had previously been issued the plaintiff in August 2001.  (Id. at ¶ 42).  Plaintiff alleges that the Township fired Krick for his failure to issue the cease-and-desist order.  (Id. at ¶ 43).  Plaintiff also contends that the Board of Supervisors exceeded their authority in issuing the enforcement order to the plaintiff.  (Id. at ¶¶ 44, 46-48).  He alleges that this action violated his constitutional due process rights.  (Id. at ¶ 45).  Attorney Wallibilich then instituted a declaratory judgment action in an effort to determine whether the

5

Township's action violated the law.  (Id. at ¶ 50).  This action forced plaintiff spend considerable sums defending himself.  (Id. at ¶ 51).

In May 2001, the Township's Zoning Hearing Board denied Guarantee Towers, Inc. a permit to erect a cell phone tower on commercially zoned property. (Id. at ¶ 52).  The Board concluded that the Township code permitted such structures only within the industrial zone.  (Id.).  Later that year, plaintiff applied for a special exemption to erect a cell phone tower on his property, which was within the industrial zone.  (Id. at ¶ 53).  The Zoning Hearing Board denied this request.  (Id.). In November 2002, the Zoning Hearing Board came to a different conclusion about where such towers could be located.  (Id. at ¶ 54).  The Board allowed Schuylkill Mobile Fone to locate a tower in a residentially zoned area.  (Id. at ¶ 54-55). Attorney Wallibilich, whose law partner represented Schuylkill Mobile Fone, did not appear to contest this application.  (Id. at ¶ 55).  Plaintiff contends that ample grounds existed to challenge the requested permit, and that the decisions made by the Board regarding cell phone towers were "arbitrary and capricious."  (Id. at ¶ 55-56).

Defendants ordered the plaintiff to subdivide his property in order to obtain a permit to take water from his property.  (Id. at ¶ 58).  Other owners who used their property for multiple purposes, like Schuylkill Mobile Fone, were not similarly required to subdivide.  (Id. at ¶ 57).  No other property owners in the IP were required to create subdivisions.  (Id. at ¶ 59).  The previous Township solicitor had

determined that no subdivision or land development plan was necessary to place either a cell phone tower or water tanks on their property.  (Id. at ¶ 61).  Plaintiff contends that the defendants "acted arbitrarily and capriciously, and acted in a manner as to treat similar applicants in totally disparate ways" in requiring plaintiff to subdivide his property while not requiring other owners to do the same.  (Id. at ¶ 60).  In addition, plaintiff contends, Defendant Wallibillich in May 2004 developed complex criteria for placing a cellphone tower in the Township.  (Id. at ¶ 62).  The one existing tower was exempt from this criteria.  (Id.).  The effect of those regulations was that no other tower could be built in the Township.  (Id.).  The current tower owner, a client of Wallibillich's law firm, received a "windfall" from this arrangement.  (Id.).

In order to end the controversy, plaintiff in September 2004 filed an application for zoning approval to remove water from his property.  (Id. at ¶ 63).  A Pennsylvania Commonwealth Court decision earlier that year had determined that removing water from a property for human consumption constituted agriculture.  (Id. at ¶ 64).  Plaintiff alleges that the township zoning officer was "fully briefed" on this decision.  (Id.).  All agricultural uses were permitted by right on plaintiff's property.  (Id. at ¶ 65).  Defendant Moyer, the zoning officer, nevertheless on October 28, 2004 denied plaintiff's permit application.  (Id. at ¶ 66).  Moyer similarly denied plaintiff's application for a permit that would have allowed him to lease a portion of his property for a truck terminal.  (Id. at ¶¶ 67-69).  This use was permitted by right on that property.  (Id. at ¶ 67).  Plaintiff appealed this decision to the Zoning Hearing Board,

7

which denied the appeal.  (Id. at ¶ 70).  The Zoning Hearing Board held that if the plaintiff applied for the permit in his own name, rather than the lessor's, the zoning officer would be required to issue the permit.  (Id. at ¶ 71).  Though plaintiff made such an application on May 1, 2005, Moyer denied the application on July 6, 2005. (Id. at ¶ 72).

Defendant Judy Epting signed a petition against the plaintiff while a private citizen, and again while serving as a Township supervisor.  (Id. at ¶ 73).  The Township received both petitions.  (Id.).  According to the plaintiff's complaint, the Township Board of Supervisors funded and adopted a Comprehensive Plan between 2000 and 2001.  (Id. at ¶ 74).  That plan classified plaintiff's property in the industrial zone.  (Id. at ¶ 75).  In December 2004, the Township adopted a new Zoning Code, which the plaintiff contends was required by state law to conform to the Comprehensive Plan adopted in 2001.  (Id. at ¶ 76).  The new zoning ordinance designated the plaintiff's property agricultural land.  (Id. at ¶ 77).  Supervisor Epting voted for these changes.  (Id.).  The only major landowner whose property remained in the Industrial Zone, John Rich, is a client of the defendant law firm.  (Id. at ¶ 78).

Plaintiff challenged these zoning changes.  (Id. at ¶ 79).  The Zoning Hearing Board held three meetings, and then unanimously found that the 2004 changes were invalid.  (Id. at ¶ 79).  The solicitor for the board then called for an executive session. (Id.).  After this meeting, the Board held another vote.  (Id.).  They again concluded that the changes were invalid.  (Id.).  More discussion ensued, and the Board voted

again.  (Id.).  This third vote found the 2004 ordinance valid.  (Id.).

On December 1, 2004, plaintiff filed another subdivision plan with the Township.  (Id. ¶ 80).  The Township took no action in that month.  (Id.).  The Township Planning Commission held a meeting on January 16, 2005.  (Id. at ¶ 81).  Ten minutes before the start of that meeting, plaintiff received a review letter regarding his project.  (Id.).  Plaintiff contends that this procedure was improper.  (Id.).  The Commission, he alleges, had to supply him with that document ten days before the meeting.  (Id.).  At the meeting, the Commission heard comments on the plan and then tabled it.  (Id. at ¶ 82).  Barbara Gosselin submitted a similar plan at the same meeting, and likewise had her plan tabled.  (Id. at ¶ 83).  On February 7, 2005, Gosselin received a 90-day extension from the Board of Supervisors to amend her plan to meet the supervisor's exceptions.  (Id. at ¶ 84).  Plaintiff asked for a similar extension of time on March 6, 2005, after his wife passed away on February 5, 2005.  (Id. at ¶¶ 85-86).  The Commission, without explaining why, refused.  (Id. at ¶ 86).

Plaintiff alleges the Township's zoning laws have not been uniformly or fairly applied, partly as a result of conflicts of interest on the part of Township officials.  (Id. at ¶ 88).  Planning Commission member Garlow, for instance, formed an organization called Friends of Bear Creek, presumably to protest the plaintiff's plan for his property.  (Id. at ¶ 87).  Despite this, Garlow continued to participate in decisions about the plaintiff's property.  (Id.).  Plaintiff contends that the defendants'

9

actions in relation to his applications directly conflict with the mandates of state law and are therefore "arbitrary and capricious" and in violation of his Fourteenth Amendment rights.  (Id. at ¶ 89).

On October 27, 2006, plaintiff filed the instant complaint in this court.  The complaint consists of seven counts.  The first count alleges a violation of plaintiff's substantive due process rights, contending that defendants' actions in denying him zoning permits were based on political or personal bias and animus not related to the merits of the project.  (Id. at ¶ 95).  That decision, plaintiff alleges, undermined his ability to use and/or enjoy the property.  (Id.).  Count II of the complaint alleges violations of plaintiff's procedural due process rights.  He contends that defendants' actions deprived him of a protected property interest, and that the state procedure for challenging that action provides an insufficient remedy.  (Id. at ¶ 101).  Count III alleges a conspiracy to deprive plaintiff of his due process rights through an arbitrary and capricious application of the township's zoning ordinances.  (Id. at ¶ 104).  Count IV alleges that a municipality policy, custom or practice that permitted or caused violations of his due process rights.  (Id. at ¶ 107).  Count V contends that defendants caused an unlawful taking of plaintiff's property.  Count VI avers that defendants' zoning decisions unlawfully interfered with plaintiff's business relationships.  Count VII seeks compensation for denial of plaintiff's equal protection rights, alleging that he was discriminated against as a class of one.  Plaintiff seeks $100,000 in compensatory and punitive damages on each count.

On January 31, 2007, defendants Koch, Stock, Zenker, Epting, The Zoning Hearing Board of South Manheim Township, Strouse, Moyer, Taylor, The Planning Commission of South Manheim Township, Mallone, Miller, Wolfe and the Township of South Manheim filed a motion to dismiss plaintiff's complaint (Doc. 34).  On the same day, defendants Wallibillich and the Cerrullo Datte Wallibillich Law Firm also filed a motion to dismiss (Doc. 38).  On February 15, 2007, defendants Systems Design Engineering Inc. and Stephen Moyer likewise moved to dismiss the case against them (Doc. 45).  These matters have been fully briefed, brining the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view

11

them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist.,

132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

The defendants offer three different motions to dismiss the plaintiff's

complaint.  We will address these motions together, as they raise similar grounds.

**Preliminary Matters**

Defendants raise several preliminary arguments in their motions.  We will

address them first.

**i.  Ripeness**

Defendants contend that plaintiff's claims are not ripe because he has not

alleged that he appealed the zoning decisions in question to the Township's Zoning

Hearing Board.  "It is well established that, in § 1983 cases involving land-use

decisions, a property owner does not have a ripe claim until the zoning authorities

have had 'an opportunity to arrive at a final, definitive position regarding how [they]

will apply the regulations at issue to the particular land in question.'" Lauderbaugh v.

Hopewell Twp., 319 F.3d 568, 574 (3d Cir. 2003) (quoting Taylor Investment, Ltd. v.

Upper Darby Twp., 983 F.2d 1285, 1291 (3d Cir. 1993)).  Courts use this rule "to bar

constitutional claims by property owners or tenants who have challenged the denial

of a permit by an initial decision-maker but failed to take advantage of available,

subsequent procedures."  Id.  The issue in such cases is thus one of ripeness:

"property owners' constitutional claims based upon land-use decisions [are]

12

premature where the owners or tenants were denied permits by the initial decision-makers but did not avail themselves of available, subsequent procedures." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 597 (3d Cir. 1998); see also Midnight Sessions v. City of Philadelphia, 945 F.2d 667, 686 (3d Cir. 1991) (finding that plaintiffs failure to appeal fines to a Zoning Review Board "precludes 'final administrative action' by the City and, therefore, these claims were premature and should have been dismissed on summary judgment."). The question here, then, is whether plaintiff obtained a "final administrative decision" on his permit applications: "[t]he ripeness doctrine prevents judicial interference 'until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Lauderbaugh, 319 F.3d at 575.

At issue in this case are three zoning applications filed by the plaintiff. First, plaintiff contends that the Zoning Hearing Board denied his application for a special exception to build a cellphone tower on land in an industrial zone. Second, plaintiff points to his September 2004 application to remove water from his land in the industrial zone. The Township zoning officer at first denied his application. Plaintiff appealed this decision to the Zoning Hearing Board. Plaintiff claims that the Board reversed the officer's decision, finding that plaintiff was entitled to the permit if he filed the application in his own name. On May 1, 2005, plaintiff made such an application, which the zoning officer subsequently denied. Plaintiff does not allege that he appealed this decision to the Zoning Hearing Board. Third, plaintiff points to

13

the Township Planning Commission's rulings refusing a request to delay action on his December 1, 2004, subdivision plan.  He does not allege that the Township Planning Commission issued a decision on his plan, or that he appealed such a decision to the Zoning Hearing Board.

Though plaintiff does not allege in any detail the procedural history of the first of these complaints about zoning decisions, he does allege that the Zoning Hearing Board decided not to grant his application for a special exception.  Under Pennsylvania law, this denial by the Zoning Hearing Board constitutes a final administrative action, and plaintiff's claim about that decision is ripe.  See 53 P.S. § 10909.1(a)(3) (establishing that "[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters: . . . (3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor").  That decision is therefore ripe.  The Township's decisions in the other two zoning decisions, however, do not contain allegations that the Township issued any sort of final administrative action on plaintiff's applications.  Plaintiff does not allege that he appealed the zoning officer's decision on his May 1, 2005 application to the Zoning Hearing Board.  He does not allege that the Planning Commission made a final decision on his December 1, 2004 plan.  Absent such allegations of finality, plaintiff has not alleged that his claims are ripe and justiciable.

Plaintiff therefore has not stated a substantive due process or equal protection

14

claim with respect to his zoning applications of December 2004 and May 2005.  We will not dismiss the claims with prejudice on these grounds, however, since plaintiff could amend the complaint to allege properly that the Township has issued a final administrative action and that his claim is ripe.  See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (finding that "it is an abuse of discretion to deny leave to amend unless 'plaintiff's delay in seeking amendment is undue, made in bad faith, prejudicial to the opposing party, or [the amendment] fails to cure the jurisdictional defect.'"  (quoting Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 886 (3d Cir. 2000)  "Leave to amend may be denied, however, if amendment would be futile."  Id.   Because we do not dismiss the entire claim with prejudice on these grounds, we will address the rest of defendants' grounds for dismissing the complaint.

## ii.  Action Under Color of State Law

Defendants James Wallibillich and the Cerrullo Datte Wallibilllich law firm also argue that the complaints against them are insufficient.  They contend that plaintiff's claims do not allege that they acted under color of state law to deprive him of his constitutional rights, as required by 42 U.S.C. § 1983.  Defendant Wallibillich contends that plaintiff's complaint alleges only that he worked as township solicitor beginning on January 6, 2002, that he instituted a declaratory judgment act involving the plaintiff, that he failed to appear to defend the township zoning officer's grant of a variance for a cell phone tower and that he set up the criteria for future cell phone

15

towers.

We find that defendant Wallibillich acted under color of state law in his capacity as solicitor in evaluating and establishing zoning standards.  In most cases, conduct by private actors is beyond the scope of constitutional sanction, but "governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints."  Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991).  Courts apply a two-part test to determine whether a private actor can be subject to such constraints: first, courts ask "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority."  Id.  Next, they inquire "whether the private party charged with the deprivation could be described in all fairness as a state actor."  Id.  The activities of Defendant Wallibillich about which plaintiff complaints were the duties he undertook in his capacity as township solicitor, including efforts to establish Township criteria for cell phone tower permits.  Establishing the criteria for permit applications and evaluating those applications are clearly activities that have their source in state authority.  Defendant Wallibillich, in establishing the standards by which to judge permit applications, would in all fairness be considered a state actor. He carried out a duty mandated under local government authority, establishing standards that applied under local law.  Wallibillich could therefore be considered a state actor.  We will deny his motion to dismiss on this point.

16

The question of whether Defendant Wallibillich's law firm should be considered a state actor is, however, a different question.  Plaintiff does not make any specific allegations against the law firm, instead only implying that some of the law firm's clients benefitted by the decisions made by Township officials.  Such conduct was not engaged in by the law firm, but by other city officials.  Plaintiff thus appears to seek liability for the law firm under a *respondeat superior* theory.  Such liability is unavailable under Section 1983.  See Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007) (finding that "municipal liability under 42 U.S.C. § 1983 cannot be based on the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights."); Mabine v. Vaughn, 25 F. Supp. 2d 587, 592 (E.D. Pa. 1998) (holding that "Section 1983 does not permit the finding of liability based on any *respondeat superior* theory; rather, when suing individuals in supervisory capacities, the plaintiff has the burden of demonstrating either the supervisor's personal involvement in the violation or the supervisor's affirmative promulgation of a policy leading to the violation.").[1]  Accordingly, while Defendant Wallibillich could be liable under federal civil rights law, his law firm cannot be fairly said to be a state actor.  No allegations exist that the law firm was involved in establishing a municipal policy or custom, and therefore cannot be a state actor in this instance.  We will grant the motion to

---

[1]While we recognize that these cases refer to municipalities, if the law firm is not a state actor it cannot be liable for "acting under color of state law" as required by 42 U.S.C. § 1983.

dismiss with respect to the law firm.

### iii. Immunity for Certain Defendants

The defendants who are members of the Township's Board of Supervisors, the Zoning Hearing Board and the Planning Commission argue that they should enjoy legislative or quasi-judicial immunity for their actions.  Decisions concerning a new zoning code or regulations related to cell phone towers, they argue, are legislative actions which entitle the members of those decision-making bodies to immunity.  Likewise, the Zoning Hearing Board and its members contend that they are entitled to quasi-judicial immunity for hearing and resolving zoning disputes. Finally, Defendant Moyer and Systems Design Engineering argue that they should be entitled to qualified immunity in the case.

Courts have concluded that some government officials can enjoy a quasi-judicial immunity from suit.  This doctrine holds that "government actors whose acts are relevantly similar to judging are immune from suit." Dotzel v. Ashbridge, 438 F.3d 320, 325 (3d Cir. 2006).  Thus, "if a state official must walk, talk, and act like a judge as part of his job, then he is as absolutely immune from lawsuits arising out of that walking, talking, and acting as are judges who enjoy the title and other formal indicia of office." Id.  We will first consider the question of whether members of the zoning hearing board enjoy this quasi-judicial immunity.

The Third Circuit Court of Appeals has concluded that a zoning hearing board acted in a quasi-judicial capacity in denying a conditional-use permit. See Omnipoint

Corp. v. Zoning Hearing Bd, 181 F.3d 403, 409 (3d Cir. 1999).  The Circuit Court has

also indicated that Zoning Hearing Board members have immunity for their

decisions.  In Dotzel, the Court noted that three factors determine whether a job

function is quasi-judicial:

> First, does a Board Member, like a judge, perform a traditional 'adjudicatory'
> function, in that he decides facts, applies law, and otherwise resolves disputes
> on the merits (free from direct political influence)?  Second, does a Board
> member, like a judge, decide cases sufficiently controversial that in the
> absence of absolute immunity, he would be subject to numerous damages
> actions?  Third, does a Board member, like a judge, adjudicate disputes
> against a backdrop of multiple safeguards designed to protect [the parties']
> constitutional rights?

Doetzel, 438 F.3d at 325.

In considering these questions in reference to the decisions made by zoning hearing

boards, the court concluded that "[t]he Board members here were acting in a quasi-

judicial capacity, and are absolutely immune from suit in their individual capacities."

Id. at 327.

Since the plaintiff's claims against the individual members of the Zoning

Hearing Board are claims about the decisions made as members of that board, the

zoning hearing board members, like the board members in Dotzel, enjoy quasi-

judicial immunity for claims against them in their individual capacities.  The only

complaints against Defendants Strouse, Moyer and Taylor are in the form of

complaints about their decisions as hearing board members, and we will grant those

defendants' motion to dismiss the case against them.

We next consider immunity for members of the Planning Commission and the

19

Board of Supervisors.  Defendants contend that the members of these agencies are entitled to both legislative and quasi-judicial immunity.  The United States Supreme Court has established that "local legislators are . . . absolutely immune from suit under § 1983 for their legislative activities."  Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998).  This absolute immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'"  Id. at 54 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).  In considering whether an act is "legislative," a court focuses on "the nature of the act, rather than on the motive or intent of the official performing it."  Id. An executive official can enjoy legislative immunity "when they perform legislative functions," such as a President or governor signing or vetoing a bill.  Id. at 55. Voting on an ordinance "[reflects] a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents."  Id. at 55-56.  "[A]ctivities by legislators that directly affect drafting, introducing, debating, passing or rejecting legislation, are 'an integral part of the deliberative and communicative processes," and are properly characterized as legislative."  Baraka v. Codey, 481 F.3d 187, (3d Cir. 2007) (quoting United States v. Brewster, 408 U.S. 501, 512 (1972)).

Our question here, then, is whether the members of the Township Planning Commission and Board of Supervisors were acting "in the sphere of legitimate legislative activity" when they took the actions of which plaintiff complains.  Bogan, 523 U.S. at 54.  Plaintiff alleges that these defendants "did recklessly, intentionally

20

deliberately, maliciously, willfully and outrageously act in an arbitrary and capricious manner for personal reasons unrelated to the merits of the proposed use of the property and the laws." (Complt. at ¶ 97). This is not an allegation of activity outside of legitimate legislative acts, but instead an allegation about the motives that defendants had for performing that activity. Defendants who are members of these boards, therefore, enjoy immunity for the legislative decisions about which plaintiff complains. We will not dismiss this count with prejudice, however, since plaintiff could amend the complaint to allege actions by these defendants outside the bounds of legitimate legislative activity.

A qualified immunity is also "available to officers of the executive branch of government, the variation being dependent on the scope of discretion and responsibilities of the office and to all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based."[2] Butz v. Economu, 438 U.S. 478, 497 (1978) (quoting Scheuer v. Rhodes, 416 U.S. 232, 247-48 (1974)). Such immunity "shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[2]The Third Circuit Court of Appeals has recently determined that "a qualified immunity determination must be made in light of the specific factual context of the case, and when a complaint fashioned under the simplified notice pleading standard of the Federal Rules does not provide the necessary factual predicate for such a determination, the district court should grant a defense motion (whether formally or informally made) for a more definite statement regarding the facts underlying the plaintiff's claim for relief." Thomas v. Independence Twp., 436 F.3d 285 (3d Cir. 2006).

reasonable person would have known.'" <u>Capone v. Marinelli</u>, 868 F.2d 102, 104 (3d

Cir. 1989) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In such cases,

"[i]t is the existence of reasonable grounds for the belief formed at the time and in

light of all the circumstances, coupled with good-faith belief, that affords a basis for

qualified immunity of executive officers for acts performed in the course of official

conduct.'" <u>Butz</u>, 438 U.S. at 498.

       This qualified immunity is not available for Defendant Moyer in this case.

Plaintiff's complaint apparently includes defendant Moyer in the accusation of

deliberately reckless behavior in making zoning use decisions detailed in the

preceding paragraph.  If plaintiff can prove that Moyer made his executive decisions

on these grounds, he could prove that Moyer lacked a good-faith belief that his

decisions followed the law.  Accordingly, we will deny the motion to dismiss on this

point.[3]

**iv.  Official Capacity Claims**

       The individual defendants who are members of the South Manheim Township

Council, Zoning Hearing Board and Planning Commission argue that they cannot be

liable in their official capacity because such claims amount to claims against the

local government entity.  Since the entity is a party to the lawsuit, the individual

---

[3]Because plaintiff makes no specific allegations against Defendant Systems Design Engineering (SDE), but appears simply to sue that defendant as Moyer's employer, we will also dismiss SDE from the case.  *Respondeat Superior* liability is unavailable in Section 1983 suits, and even if it were, no underlying violation exists to supply SDE with such liability.

defendants argue, claims against the individual defendants in their official capacities are not valid.  The plaintiff agrees that claims against the defendants in their official capacities should be dismissed, and we will grant the defendants' motion on this point.

## v.  Claims Against the South Manheim Township Planning Commission and Zoning Hearing Board

Defendants argue that claims against the Zoning Hearing Board and Township Planning Commission of South Manheim Township should be dismissed.  They contend that the two boards are not separate, sueable entities under federal law.  To support this proposition, defendants cite Dooley v. City of Philadelphia, 153 F. Supp. 2d 628, 637 n.1 (E.D. Pa. 2001).  In Dooley, the Court concluded that plaintiff could not sue the Philadelphia Police Department but instead had to name the City of Philadelphia in her suit.  Id.  The Department, the court found, "is not a separate legal entity that can be sued apart from the City of Philadelphia."  Id.  The authority on which the court relied for that decision points to 53 PENN. CONS. STAT. § 1625 to explain why a department of the City of Philadelphia cannot be sued.  See Atkinson v. City of Philadelphia, *6 (E.D. Pa. 2000); City of Philadelphia v. Glim, 613 A. 2d 613, 616 (Pa. Commw. Ct. 1992) (holding that "all suits against any department of the City must be brought in the name of the City itself because the departments of the City do not have an independent corporate existence.").  The section establishes that no department of the City of Philadelphia has "a separate corporate existence" and that "all suits growing out of their transactions . . . shall be

23

in the name of the City of Philadelphia." 53 PENN. CONS. STAT. § 16257.  If plaintiff's suit were against a department of the City of Philadelphia, then, we would grant defendants' motion to dismiss against the agencies.

No similar statute establishes that departments of South Manheim are not legally distinct from the Township.  Defendants offer no evidence that such is the case.  Our research has revealed no binding authority in the Third Circuit that establishes that the departments or agencies of Pennsylvania townships cannot be sued because they are legally inferior to the municipalities of which they are part. Indeed, we have discovered numerous cases where parties sued both a Township and that Township's Zoning Hearing Board without having their claims against the agencies dismissed on the grounds defendants raise here.  See, e.g., Taliaferro v. Darby Township Zoning Board, 458 F.3d 181 (3d Cir. 2006) (suit against both Township and Township Zoning Board); Ruiz v. New Garden Twp., 376 F.3d 203 (3d Cir. 2004) (suit seeking preliminary injunction against both Township and Township Zoning Hearing Board); Omnipoint Communications Enterprises, L.P. v. Zoning Hearing Board of Easttown Twp., 331 F.3d 386 (3d Cir. 2003); Congregation Kol Ami v. Abington Twp., 309 F.3d 120 (3d Cir. 2002) (equal protection suit against Township, Board of Commissioners and Zoning Hearing Board).  Accordingly, we deny defendants' motion on these grounds.

**vi.  Imposition of an Intervening Cause in the Case Against Attorney Wallibillich**

24

Defendant Wallibillich also alleges that he should be dismissed from the case because the only allegation directed specifically against him relates to the declaratory judgment action he filed in the Court of Common Pleas of Schuylkill County Pennsylvania.   Wallibillich points out that the Court of Common Pleas has granted summary judgment on the matter to the Township.  As a result, he argues, plaintiff cannot bring a cause of action against the defendant for filing a lawsuit in which he prevailed.

We disagree because plaintiff's complaints extend beyond Defendant Wallibillich's actions in filing the lawsuit in question.  While we agree that plaintiff could not state a claim against the defendant for filing a lawsuit in which defendant prevailed, we read plaintiff's complaint to allege that Defendant Wallibillich violated his constitutional rights to due process and equal protection in issuing zoning regulations that prevented plaintiff from enjoying use of his property, and that he did so for reasons he knew were contrary to the law.  This allegation is separate from the lawsuit that Defendant Wallibillich filed, and therefore raises a claim the validity of which we must address on other grounds.  We will deny the motion on this point.

After examining these preliminary questions, we conclude that only the Township, Defendant Wallibillich, Defendant Steven Moyer, the Township Planning Commission and the Zoning Hearing Board remain potentially liable in the instant lawsuit.  We will dismiss the suit against Defendants The Carrullo Datte Wallibillich Law Firm, Systems Design Engineering, Strouse, Clair Moyer, Taylor, Koch, Stock,

Zenker, Epting, Mallone, Miller and Wolfe.  Having disposed of those initial matters,

we will next examine whether the individual claims can survive defendants' motions

to dismiss

**Allegations of the Complaint**

Defendants also argue that each of the plaintiff's claims should be dismissed.

We will examine each in turn.

**i.  Count I**

Defendants argue that plaintiff's first claim, which alleges a violation of

plaintiff's Fourteenth Amendment Substantive Due Process rights, should be

dismissed because defendant has not alleged any conduct by these defendants that

would "shock the conscience" and constitute such a violation.  The other defendants

join in this argument.

"[W]hether a zoning official's actions or inactions violate due process is

determined by utilizing a 'shocks the conscience' test."  Eichenlaub v. Twp. of

Indiana, 385 F.3d 274, 285 (3d Cir. 2004) (quoting UA Theatre Circuit, Inc. v. Twp. of

Warrington, 316 F.3d 392, 399 (3d Cir. 2003)).  The sort of behavior that "shocks the

conscience" depends on the facts of the case, but the inquiry strives "to avoid

converting federal courts into super zoning tribunals."  Id.  "'Only the most egregious

official conduct'" constitutes behavior that "'shocks the conscience.'"  Id.  Courts have

drawn a distinction, however, between executive and legislative action that

constitutes a violation of substantive due process.  While the "shocks the

26

conscience" standard applies to executive action, a legislative action can "withstand substantive due process challenge if the government 'identifies the legitimate state interest that the legislature could rationally conclude was served by the statute.'" County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 169 (3d Cir. 2006) (quoting Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000)).  Since the actions about which plaintiff complains here are individual decisions in zoning cases, not zoning ordinances themselves, we will apply the "shocks the conscience" standard to our evaluation.

Here, plaintiff alleges more than "the kind of disagreement that is frequent in planning circles."  Eichenlaub, 385 F.3d at 286.  If plaintiff can prove, as he alleges that defendants "recklessly, intentionally, deliberately, maliciously, willfully and outrageously act[ed] in an arbitrary and capricious manner for personal reasons unrelated to the merits of the proposed use of the property and the law," will have demonstrated that defendants engaged in "the most egregious official conduct." (See Complt. at ¶ 97).  He will have demonstrated that public corruption prevented him from using his property as he intended.  This sort of official conduct, if proved, would constitute behavior that "shocks the conscience."  Since we cannot know whether plaintiff will adduce such evidence until after the parties complete discovery, we will deny the defendants' motion to dismiss this claim.

## ii.  Count II

All the defendants also argue that plaintiff's procedural due process claims

against them should be dismissed.  Since plaintiff's complaint is about decisions made by zoning officials in the township, his complaint is with the adequacy of the procedures established under state law and local ordinance.  Because courts have found that procedures established in Pennsylvania for reviewing zoning decisions comply with due process requirements.  Defendants Moyer and Systems Design Engineering also argue that plaintiff has not alleged that they failed to respond in a timely fashion to plaintiff's permit applications or failed to notify him of his right to appeal.

We agree with the defendants that plaintiff cannot state a procedural due process claim against them in this matter.  "Before a governmental body may deprive a landowner of a property interest, it must provide due process."  Rogin v. Bensalem Twp., 616 F.2d 680, 694 (3d Cir. 1980).  In Rogin, the court examined the procedures established by the Pennsylvania legislature for challenging zoning decisions: "A landowner who wishes to challenge the validity of a zoning ordinance or amendment that restricts the use or development of its land may file a challenge with the Zoning Hearing Board and may appeal from any decision by the Zoning Officer applying the ordinance.  The latter course may be taken when, as here, the landowner believes the Zoning Officer misapplied an applicable rule of law."  Id. at 964-95.  Pennsylvania law, the court pointed out, provides for mandatory hearings over zoning disputes, requirements for written decisions, representation by counsel, the right to present evidence and the right to cross-examine witnesses.  Id. at 965.

28

Petitioners also have a right to appeal such decisions to the Court of Common Pleas. Id. Accordingly, the court found that "[i]n Pennsylvania the procedure for challenging zoning ordinances substantially conforms with the general due process guidelines enunciated by the Supreme Court." Id. Since plaintiff here makes no allegation that these procedures were somehow unavailable to him, we find that plaintiff has not stated a procedural due process claim upon which relief can be granted. We will therefore grant defendants' motion to dismiss on this point.

### iii.  Count III

Count III alleges that defendants engaged in a conspiracy to deprive plaintiff of his constitutional rights. All of the defendants argue that plaintiff has not identified any illegal act committed by these defendants in furtherance of a conspiracy. In addition, the law-firm defendants argue, the attorney-client relationship between Wallibillich, the law firm and the Township defendants means that they cannot be sued as conspirators in this matter.

To state a claim for conspiracy under the civil rights statutes, a plaintiff must allege: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Bhd. of Carpenters & Joiners v.

<u>Scott</u>, 463 U.S. 825, 828-29 (1983)).

We agree that Defendant Wallibillich cannot be liable for this count.  The Third

Circuit Court of Appeals has determined that "an entity cannot conspire with one who

acts as its agent."  <u>Gen. Refactories Co. v. Fireman's Fund Ins. Co.</u>, 337 F.3d 297,

313 (3d Cir. 2003).  This doctrine applies to attorneys as well as other corporate

agents, and when "'defendants acted within the attorney-client relationship, they

cannot be considered conspirators.'"  <u>Id.</u> (quoting <u>Heffernan v. Hunter</u>, 189 F.3d 405,

413 (3d Cir. 1999)).  Plaintiff has not alleged any activity outside the scope of

Wallibillich's representation of the township, and thus cannot make out a conspiracy

claim against Defendant Wallibillich. We will grant Wallibillich's motion to dismiss on

this point.

In terms of the other defendants who remain after our initial ruling, however,

we have found that the plaintiff has alleged that defendants committed acts which

violated his constitutional right to substantive due process.  Assuming that plaintiff

can prove such acts actually occurred, he could prove the other elements of his

conspiracy claim against the defendants who remain in the case.  Accordingly, we

will deny the motion to dismiss on this point.

## iv.  Count IV

Count IV alleges that a city policy, ordinance or custom violated plaintiff's

constitutional rights.  Defendants Wallibillich and his law firm argue that they cannot

be liable for such a claim because they are individuals and not a municipality with a

responsibility for establishing such policies.  Defendants Moyer and Systems Design Engineering join in this argument.  The defendants who are individual members of the Zoning Hearing Board, the Board of Supervisors and the Planning Commission likewise contend that they cannot be liable for a municipal policy or custom.  The Township and its zoning bodies argue that they cannot be liable because plaintiff has not alleged any underlying constitutional violation on their part, and therefore they cannot be found liable.

_____A plaintiff may raise a Section 1983 claim against a municipality for violating his constitutional rights, but the plaintiff must allege that "the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 690 (1978).  In addition to officially adopted policy, a plaintiff may also allege "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the bodies official decisionmaking channels."  Id. at 690-91. A plaintiff seeking to sue a municipality for violating his constitutional rights must therefore allege that a municipal policy or custom led to that violation.  "[A] plaintiff shows a policy existed 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.'"  Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007) (quoting Bielevicz v. Dubinon, 915 F.2d , 845, 850 (3d Cir. 1990)).  To demonstrate

the presence of a custom, a plaintiff must "[show] that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. at 156 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

Defendants appear to agree that if plaintiff sufficiently alleges a violation of his constitutional rights he has here stated a Monell claim against the municipality. Since plaintiff alleges that the zoning decisions of the municipality violated his rights to equal protection and due process, he has alleged that an official policy or custom led to a deprivation of his constitutional rights. See Watson, 478 F.3d at 155. To the extent that plaintiff has stated a claim for a constitutional violation based on the zoning decisions of the municipality, then, he has stated a claim against the Township of South Manheim. He has not stated a claim against the individual defendants on this count, however, since municipal liability applies only to the municipality, and not to individual defendants who work for that municipality. Accordingly, we will grant the motion to dismiss the count against the individual defendants, but we will deny the motion to dismiss this count against the Township.

**v. Count V**

Plaintiff has agreed to withdraw his claim as to Count V, which alleged that South Manheim's zoning decisions constituted a taking in violation of the United States Constitution. We will therefore grant those portions of defendants' motions as unopposed.

32

**vi. Count VI**

Count VI is a state-law claim for third-party interference with a business

relationship.[4]  Defendants contend that the Pennsylvania Political Subdivision Tort

Claims Act, 42 PENN. CONS. STAT. § 8541, bars all intentional torts against a

municipal defendant.  Defendants also argue that plaintiff has not described with any

particularity the business relationship with which the defendants interfered or pointed

to any third party induced by defendants' behavior not to contract with the plaintiff, as

required under Pennsylvania law.

Pennsylvania law provides that "[e]xcept as otherwise provided in this

subchapter, no local agency shall be liable for any damages on account of any injury

to a person or property caused by any act of the local agency or an employee

thereof or any other person."  42 PENN. CONS. STAT. § 8541.  Exceptions to such

immunity exist, however.  State law imposes liability for certain acts by municipal

agencies under two conditions: (1) when the injuries the suit complains of would

have created a cause of action against a person who lacked immunity under Section

8541 and (2) "[t]he injury was caused by the negligent acts of the local agency or an

employee thereof acting within the scope of his office or duties."  42 PENN. CONS.

STAT. § 8542(a)(1-2).  Such exceptions to immunity are limited to eight categories:

---

[4]Defendants also argue that we should dismiss all plaintiff's federal claims and that doing so would mean we lack jurisdiction to hear plaintiff's state-law claims.  Since we will not dismiss all plaintiff's federal claims, we do have jurisdiction to hear plaintiff's state claims.

(1) operation of a motor vehicle in the agency's possession or control; (2) the care of personal property in the agency's control; (3) the care of real property in the agency's control; (4) dangers created by the agency's control of trees, traffic lights or signs, and street lighting; (5) dangerous conditions in municipally maintained utility service facilities; (6) dangerous conditions on public streets; (7) dangerous conditions on public sidewalks; (8) damage to animals in the agency's custody or control.  42 PENN. CONS. STAT. §8542(b)(1-7).  In cases where the allegations do not fall into one of these categories, the agency's immunity is not waived.  See Associates in Obstetrics & Gynecology v. Upper Marion Twp., 270 F. Supp. 2d, 633 664 (E.D. Pa. 2003) (finding that "[b]ecause the alleged acts of the named agency Defendants are not among those for which sovereignty has been waived under §8542(b), Plaintiff's state law claims against the local agency Defendants will be dismissed.").  Here, the state law allegations against the Zoning Hearing Board and the Township Planning Commission do not allege negligence and do not fall into any of these categories, and we will therefore grant the defendants' motion to dismiss those claims.

For the individual defendants who do not enjoy federal or state immunity (Defendants Wallibillich and Steven Moyer), the question remains of whether plaintiff has stated a claim against them upon which relief could be granted.[5]  Plaintiff titles

---

[5]We note that even if we did not find the members of the Zoning Hearing Board immune under federal law, we would find them immune under state law.  In Pennsylvania, "members of a zoning hearing board have previously been held to enjoy immunity for

34

this count "third party interference with business relationship."  While no

Pennsylvania tort of this type appears to exist, plaintiff's allegations, read liberally,

leads us to the claim of tortious interference with the performance of a contract.

Under that tort, a plaintiff must "plead that she was a party to a valid contract and

that [defendants] interfered with the *performance* of that contract."  Deveaux v.

Palmer, 558 A.2d 166, 170 (Pa. Commw. Ct. 1989) (emphasis in original); see also

Consolidation Coal Co. v. Dist. 5, United Mine Workers of America, 485 A.2d 1118,

1126 (Pa. Super. Ct. 1984) (holding that  "[o]ne who intentionally and improperly

interferes with the performance of a contract (except a contract to marry) between

another and a third person by inducing or otherwise causing the third person not to

perform the contract, is subject to liability to the other for pecuniary loss resulting to

the other from the failure of the third person to perform the contract.") (citing

Restatement 2d of Torts, § 766).  Here, plaintiff has alleged that defendants

"interfered with the third party business relationships and/or contracts of" plaintiff's

companies and enticed "plaintiff's customers to move elsewhere in Schuylkill

County."  (Complt. at ¶ 114).  We find that this allegation is sufficient to state a claim

against those defendants remaining in the case who do not enjoy state-law immunity

on this count.

---

decisions made by them in their official capacity."  Delate v. Kolle, 667 A.2d 1218, 1221
(Pa. Commw. Ct. 1996).   The allegations here against the members of the Zoning Hearing
Board center around decisions about land use made by the Board members in their official
capacity.

**vii.  Count VII**

Count VII alleges that plaintiff was denied equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.  Plaintiff asserts this claim on the basis of a class-of-one theory.  Defendants all argue that plaintiff has not alleged that he has exhausted his available administrative remedies, as required by the law.  Defendants Moyer and Systems Design Engineering contend that plaintiff has not alleged that they engaged in any discriminatory action.  All defendants also claim that the plaintiff does not point to any situation where those defendants treated any similarly situated property owner differently than they treated plaintiff.  Plaintiff also does not allege, defendants contend, that any disparate treatment he experienced was not rationally related to any other legitimate government purpose.

A party can allege an equal protection violation by contending that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  In the context of a zoning plan, "the first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit in a certain zone."  Congregation Kol Ami v. Board of Commissioners of Abington Twp., 309 F.3d 120, 137 (3d Cir. 2002).  If the court concludes that the plaintiff has been treated differently than similarly

situated plaintiffs, "the city must justify its different treatment of the two, perhaps by citing to the different impact that such entities may have on the asserted goal of the zoning plan." Id.

Here, plaintiff alleges that defendants denied his land-use plans and his applications for permits to remove water and place a cell phone tower on his land. Plaintiff alleges that others who were similarly situated received approval to engage in such projects. (See Complt. at ¶ 117).  Plaintiff also contends that the township officials made these zoning decisions based on improper and unconstitutional motives.  In the context of a motion to dismiss, where a plaintiff need only offer allegations which, if proved true, would entitle him to relief, plaintiff has stated an equal protection claim against the defendants.   We will deny the motion to dismiss on this point.

**Conclusion**

_____For the reasons stated above, we will grant the defendants' motions to dismiss in part and deny them in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STANLEY F. FROMPOVICZ, Jr.,** | : | **No. 3:06cv2120** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **TOWNSHIP OF SOUTH MANHEIM,** | : | |
| **TERRY KOCH,** | : | |
| **JOHN STOCK,** | : | |
| **THOMAS ZENKER,** | : | |
| **JUDY EPTING,** | : | |
| **ATTORNEY JAMES WALLBILLICH,** | : | |
| **THE CARRULLO DATTE** | : | |
| **WALLBILLICH LAW FIRM,** | : | |
| **SYSTEMS DESIGN** | : | |
| **ENGINEERING, INC.,** | : | |
| **STEVEN MOYER,** | : | |
| **THE ZONING HEARING BOARD OF** | : | |
| **SOUTH MANHEIM TOWNSHIP,** | : | |
| **MARGARET STROUSE,** | : | |
| **CLAIR F. MOYER,** | : | |
| **RAYMOND TAYLOR,** | : | |
| **THE PLANNING COMMISSION OF** | : | |
| **SOUTH MANHEIM TOWNSHIP,** | : | |
| **WARREN MALLONE,** | : | |
| **ELAINE MILLER, and** | : | |
| **GREGORY WOLFE,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW,** to wit, this 4th day of October 2007, the defendants' motions to

dismiss plaintiff's complaint (Docs. 34, 38 and 45) are hereby **GRANTED IN PART**

and **DENIED IN PART** as follows:

1) Defendants Carullo Datte Wallibillich Law Firm, Systems Design Engineering, Inc., Margaret Strouse, Clair F. Moyer, Raymond Taylor, Terry Koch, John Stock, Thomas Zenker, Judy Epting, Warren Mallone, Elaine Miller and Gregory Wolfe are **DISMISSED** from the case;

2) Count III is **DISMISSED** against Defendant Wallibillich;

3) All claims related to plaintiff's May 1, 2005 application to remove water from his land in an industrial zone and his December 1, 2004 subdivision plan are **DISMISSED**;

4) Counts II and V are **DISMISSED**;

5) Count VI is **DISMISSED** with respect to all defendants except Defendant Steven Moyer and Defendant Wallibilllich;

6) Defendants' motions to dismiss as to all other defendants and all other counts are **DENIED**; and

7) Plaintiff is **ORDERED** to file an amended complaint within twenty (20) days of the date of this order that reflects the claims and defendants remaining in the case after this decision.

                                    **BY THE COURT:**


                                    **s/ James M. Munley**
                                    **JUDGE JAMES M. MUNLEY**
                                    **United States District Court**